UNITED STATES STEEL CORPORATION, Petitioner, *v.* THE POLLUTION CONTROL BOARD, Respondent.

Second District   No. 74-327

Opinion filed August 23, 1977.

2

Henry L. Pitts and Clifton A. Lake, both of Hackbert, Rooks, Pitts, Fullagar & Poust, of Chicago, for petitioner.

William J. Scott, Attorney General, of Chicago (Russell R. Eggert, Marvin I. Medintz, Richard W. Cosby, and Dennis R. Field, Assistant Attorneys General, of counsel), for respondent.

Mr. JUSTICE BOYLE delivered the opinion of the court:

This action involves a petition by United States Steel Corporation (petitioner) for direct appellate review of regulations promulgated by the Illinois Pollution Control Board (Board) pursuant to sections 29 and 41 of the Environmental Protection Act (Act) (Ill. Rev. Stat. 1975, ch. 111½, pars. 1029, 1041) and Supreme Court Rule 335 (Ill. Rev. Stat. 1975, ch. 110A, par. 335). The regulations establish standards for the control of the discharge of pollutants from point sources into the navigable waters within the State of Illinois. (See proceedings of the Illinois Pollution Control Board, No. 73—11 and No. 73—12.)

There are essentially three issues presented for review: (1) whether certain of the regulations, as promulgated, are inconsistent with the Board's authority under the Act; (2) whether certain of the regulations, as promulgated, are arbitrary, capricious and unreasonable; and (3) whether certain of the regulations, as promulgated, are unconstitutional as a denial of due process. Although the Board and petitioner have briefed and argued a number of points, their arguments will be examined here only to the extent necessary for a determination of this case.

■■ The framework and scope of these regulations, as well as the background of their development, has been previously examined in great detail by the Fifth District of this court in *Peabody Coal Co. v. Pollution Control Board* (5th Dist. 1976), 36 Ill. App. 3d 5, 344 N.E.2d 279. It is unnecessary to reiterate that discussion here. Likewise, we need not repeat the sound principles of judicial review of administrative regulations as set forth by our supreme court in *Commonwealth Edison Co. v. Pollution Control Board* (1976), 62 Ill. 2d 494, 343 N.E.2d 459, and in *Illinois Coal Operators Association v. Pollution Control Board* (1974), 59 Ill. 2d 305, 319 N.E.2d 782, and again by the Fifth District of this court in *Shell Oil Co. v. Illinois Pollution Control Board* (5th Dist. 1976), 37 Ill. App. 3d 264, 346 N.E.2d 212. We believe that these four cases are dispositive of the principal issues presented for review by petitioner. However, *Peabody Coal* is dispositive only to the extent that we are in accord with the Fifth District and its findings.

I

Petitioner contends that the Board's Administrative Rule 410(b)[1] is

---

[1] Rule 410(b) provides: "No person may discharge any pollutant subject to, or which contributes or threatens to cause a violation of any applicable federal or state water quality standard, effluent standard, guideline or other limitation, promulgated pursuant to the FWPCA or the Act, unless limitation for such a pollutant has been set forth in an applicable NPDES permit. However, the Agency may, by permit condition, provide that the permittee may discharge pollutants present in its water supply intake sources in concentrations not greater than the concentrations in the intake sources, or which are added in trace amounts by normal domestic water usage."

contrary to applicable provisions of the Act in that the Board exceeded the scope of its delegated authority. Rule 410(b) requires a permit applicant to determine whether or not a pollutant is present in its discharge, *to any extent whatsoever,* regardless of whether the discharge is in compliance with all Federal and State guidelines or whether the permit applicant even knows of a pollutant's existence. (Emphasis added.) Petitioner contends the Board has exceeded its legislative mandate (Ill. Rev. Stat. 1975, ch. 111½, par. 1013(b)(i)) in requiring a National Pollution Discharge Elimination System (NPDES) permit applicant to determine every pollutant present in its discharge, no matter how minimal the amount, and to set forth this pollutant in its application for an NPDES permit. The Illinois NPDES administrator then would issue allowable discharge levels for each of the pollutants enumerated in the NPDES permit application. All other discharges of pollutants which are not specified in the Illinois NPDES permit would then be forbidden. Petitioner contends this provision is in direct contravention to the Federal NPDES permit, which, it argues, grants to the permittee a *general* authorization to discharge pollutants limited only by conditions in the permit which restrict in some manner the discharge of certain specified pollutants. Thus, all discharges, except those specifically limited by the Federal NPDES, would then be permissible.

Petitioner also contends that under section 12(f) "[n]o permit shall be required * * * for any discharge for which a permit is not required under the Federal Water Pollution Control Act Amendments of 1972 * * *." (Ill. Rev. Stat. 1975, ch. 111½, par. 1012(f).) Petitioner argues that under section 12(f), the Illinois regulations should require an Illinois NPDES permit only where a Federal NPDES permit would be required. Petitioner further argues that the legislative intent of the Illinois NPDES program is consistency with the Federal Act and regulations (Ill. Rev. Stat. 1975, ch. 111½, par. 1013(b)(i)) and contends that Rule 410(b), as promulgated, is not necessary under section 12(f) for Federal approval of Illinois' NPDES permit program.[2]

It is clear that section 13(b)(i) of the Illinois Act, which requires the Board to promulgate regulations "necessary or appropriate" for Federal approval and regulations which are "consistent" with the FWPCA, does not limit the Board's rule-making power to that necessary to obtain Federal approval of Illinois' NPDES permit program, as petitioner contends. (*Peabody Coal Co. v. Pollution Control Board* (1976), 36 Ill. App. 3d 5, 15-16, 344 N.E.2d 279, 285.) Such a limited interpretation of the

---

[2] At this date, Illinois' NPDES permit program has not been approved by the Federal Administrator, and the authority to issue NPDES permits in the State of Illinois resides in the Administrator of the U. S. Environmental Protection Agency and will remain at the Federal level until Illinois' NPDES program is approved.

Illinois Act would unduly hinder the Board from achieving the true goal of the NPDES permit system, which is the limitation of the discharge of point source pollutants into navigable waters by the "best practicable [water pollution] control technology currently available" by July 1, 1977, and the "best available technology economically achievable" by July 1, 1983. 33 U.S.C. §1311(b)(1)(A)(i), (2)(A)(i) (1975 Supp.).

In addition, under section 402(a)(1) and (b) of the FWPCA a NPDES permittee must comply with section 308 of the FWPCA and must report and monitor all *regulated* pollutants. The Federal Administrator also, may request additional reporting of pollutants from permit holders "as he may reasonably require." (33 U.S.C. §1318(a)(A) (1975) Supp.).) Thus, petitioner's argument that Rule 410(b) is invalid because it exceeds the Board's delegated authority under the Illinois Act fails because under the FWPCA, a NPDES permittee may be required by the Administrator to report any pollutants present in his discharge "as he may reasonably require." 33 U.S.C. §1318(a)(A)(1975 Supp.); *Peabody,* 36 Ill. App. 3d 5, 14.

■■ Thus, we hold the requirements of Rule 410(b) do not exceed the Board's delegated authority under the Illinois Act, nor is Rule 410(b) inconsistent with the FWPCA, nor is it in contravention of the requirements of section 12(f).

## II

Petitioner also contends that Rule 410(b) is arbitrary and capricious because it failed to follow the procedure set forth in section 27 of the Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1027) and did not "take into account * * * the technical feasibility and economic reasonableness of measuring or reducing the particular type of [water] pollution."

Petitioner argues that the Board's conduct is arbitrary and capricious because the Board did not make findings of fact as to the economic reasonableness and technical feasibility of identifying each and every pollutant as required under the rationale of the First District of this court in *Commonwealth Edison Co. v. Pollution Control Board* (1974), 25 Ill. App. 3d 271, 323 N.E.2d 84, *aff'd in part and rev'd on other grounds,* 62 Ill. 2d 494, 343 N.E.2d 459 (1976). Section 27 was interpreted by the appellate court in *Commonwealth Edison* to mean that rules limiting the emissions of sulphate dioxide and other particulates into the air would be valid only if it were shown to be technically feasible and economically reasonable for a *substantial* number of the individual emission sources in the State. 25 Ill. App. 3d 271, 281-82.

The Fifth District of this court in *Peabody* also determined that under section 27 "the substantive regulations of the Board should be economically reasonable and technically feasible for a substantial number

of emission sources in the State." (36 Ill. App. 3d 5, 10.) The Fifth District in *Peabody* was evaluating the Board's promulgation of Rule 410(b) and determined in applying that standard that the record did not contain sufficient "evidence to support a finding that compliance with the requirement of Rule 410(b) would be technically feasible and economically reasonable *for a substantial number of* dischargers within the State." (Emphasis added.) 36 Ill. App. 3d 5, 13.

We are not bound by the *Peabody* decision and choose not to follow it. In fact, the Fifth District Appellate Court subsequently determined that it is unsound to evaluate the evidence produced before the Pollution Control Board by the standard of "whether such rules are economically reasonable and technologically feasible for a substantial number of emission sources within the State." *Shell Oil Co. v. Pollution Control Board* (1976), 37 Ill. App. 3d 264, 279, 346 N.E.2d 212, 224 (concurring opinion).

We have determined that the proper standard for evaluating regulations promulgated by the Board is whether "the rules * * * are clearly arbitrary, unreasonable or capricious." (*Illinois Coal Operators*, 59 Ill. 2d 305, 310.) This same standard was used by the supreme court in evaluating the validity of sound-emission regulations established by the Board and is equally applicable to appraise the soundness of water pollution standards.

■■ Petitioner further contends that the Board has the burden of establishing the validity of these water regulations. It is clear, however, that the burden of establishing the invalidity of these water effluent regulations clearly rests with the petitioner. (*Shell Oil*, 37 Ill. App. 3d 264, 272, *Illinois State Chamber of Commerce v. Pollution Control Board* (1977), 49 Ill. App. 3d 954, 364 N.E.2d 631.) In placing this burden of establishing the invalidity of the Board's regulations with petitioner, we are giving due deference to the expertise and knowledge of the Pollution Control Board in the promulgation of its administrative regulations.

The Board conducted hearings spanning two years in its efforts to comport its regulations to those of the FWPCA and the requirements of the Illinois act. The evidence compiled was based on the expertise of the Pollution Control Board and its members, who initially proposed and developed the regulations pursuant to the Illinois Act and the FWPCA, and on the testimony of many witnesses representing a wide spectrum of interests at five public hearings held statewide. Where personal appearances were not feasible, written submissions of recommendations for modifications were submitted by business and environmental interests. The evidence demonstrates that the Board considered every request for modification of the proposed regulations at issue here. The Board, thereupon, took the appropriate action pursuant to its quasi-

legislative function either to modify the rule or to explain its reasons for refusing to do so.

Petitioner submits the comments of five corporations to show that the Board's finding was clearly arbitrary, capricious and unreasonable in not taking into account the technical feasibility and economic and reasonableness of monitoring and reporting substances which may be in its discharge materials in trace amounts. We fail to see how these comments demonstrate the arbitrariness, capriciousness or unreasonableness of implementing these regulations based on the entire record. In addition, "[t[he specifics of the Board's cost evaluations, however, are a matter of administrative discretion, and the Board is not required to produce a record which discloses that a substantial number of the polluters in the State can reasonably afford the cost and operation of the requisite control equipment." *Shell Oil*, 37 Ill. App. 3d 264, 276.

■■ Based on the record before us, it is our opinion that Rule 410(b) has not been shown by petitioner to be arbitrary, capricious or unreasonable in any respect.

### III

Petitioner also argues that Rule 410(b) puts an unlawful and unreasonable restriction on the conduct of business because it requires polluters to monitor and report on pollutants in miniscule concentrations and is therefore beyond the police power of the State. Petitioner cites *People ex rel. Barrett v. Thillens* (1948), 400 Ill. 224, 79 N.E.2d 609, in support of their contention. It is clear from our previous analysis that Rule 410(b) is within the scope of the Illinois act and is consistent with the powers granted to the Board under the Illinois act and the FWPCA. In addition, it is not beyond the police power of the State because the methods chosen by the Board to achieve the goals of the FWPCA and the Illinois act are reasonable for achieving its purpose (*People v. Warren* (1957), 11 Ill. 2d 420, 143 N.E.2d 28), "considering the evil to be corrected." *Peabody*, 36 Ill. App. 3d 5, 16.

### IV

■■ Petitioner's next contention is that Rule 909(h), which provides that a NPDES permit is effective "when issued" by the Agency, denies procedural due process to NPDES applicants. Petitioner argues that the Illinois NPDES regulations are unconstitutional because they do not confer upon the permittee, as a matter of right, a stay of the effectiveness of contested provisions of its permit pending review by the Board. Petitioner argues that he is entitled to a "full dress" due process hearing prior to the Agency's final decision as to the conditions of the NPDES permit.

Petitioner seeks a stay as a matter of right between the date of the permit's effectiveness and final de novo review by the Board, since it contends the hearing before the Agency was not a due process hearing, but only a limited opportunity to present evidence.[3]

Petitioner argues this right of stay pending review is required before petitioner is subjected to a deprivation of its property and liability for sanctions[4] upon its failure to comply with the contested terms and conditions of the permit pending review. Petitioner cites *Fuentes v. Shevin* (1972), 407 U.S. 67, 32 L. Ed. 2d 556, 92 S. Ct. 1983, *rehearing denied,* 409 U.S. 902, 34 L. Ed. 2d 165, 93 S. Ct. 177; *Wisconsin v. Constantineau* (1971), 400 U.S. 433, 27 L. Ed. 2d 515, 91 S. Ct. 407; and *Goldberg v. Kelly* (1970), 397 U.S. 254, 25 L. Ed. 287, 90 S. Ct. 1011, in support of this contention. Petitioner also contends that administrative procedural due process is satisfied only where "the requisite hearing is held before the final order becomes effective." (*Opp Cotton Mills, Inc., v. Administrator of the Wage & Hour Division of the Department of Labor* (1940), 312 U.S. 126, 152, 85 L. Ed. 624, 640, 61 S. Ct. 524, 536.) Petitioner argues that the terms of the permit which make it effective prior to the opportunity for a due process hearing fail to satisfy the procedural due process requirement of *Bell v. Burson* (1971), 402 U.S. 535, 29 L. Ed. 2d 90, 91 S. Ct. 1586.

Substantially, these very same arguments contesting the validity of Rule 909(h) were addressed by the Fifth District of this court in *Peabody,* 36 Ill. App. 3d 5, 16-19. We are in accord with that court's reasoning and holding as applies to this issue only. In *Peabody,* the court found Rule 909(h) was valid. The *Peabody* court further determined that:

> "The government's interest in making permits effective when issued is great, as it allows the government to restrict the amount of pollutants being discharged into the waters of Illinois. This in turn promotes the State's interest in protecting the public health and environment. Without this requirement permit applicants could postpone a permit's effective date until all administrative and judicial appeals were completed, perhaps several years." (36 Ill. App. 3d 5, 19.)

In addition, the court found that the procedural safeguards, which are also present in the instant case, were sufficient to protect petitioner's due process rights. A permittee has a right to make written and oral objections to the Agency concerning the proposed regulations. A permittee may also

---

[3] The hearing before the Agency provides the opportunity for the permit applicant or any other interested party to submit oral or written statements applicable to the proposed permit. If there is enough interest generated, the Agency may then hold a public hearing.

[4] Violators are subject to imprisonment and criminal fines of up to $25,000 per day and/or civil penalties of up to $10,000 per day. Section 309 of the FWPCA of 1972, 33 U.S.C. §1319, and Ill. Rev. Stat. 1975, ch. 111½, pars. 1042 and 1044.

request a hearing prior to the Agency's ruling on the permit; and, in addition, procedural rule 308(i) provides that the Board may grant a stay pending its review. (36 Ill. App. 3d 5, 19.) These procedural safeguards adequately protect petitioner's due process rights.

Petitioner herein, likewise, has not demonstrated a sufficiently great hardship to outweigh the interests of the State in protecting its waters, health and environment. Petitioner points to penalties both civil and criminal to which it is subjected for violations of its NPDES permit pending review due to the lack of a provision for stay. However, neither the penalties or hardship petitioner is subject to nor the interest that petitioner seeks to protect are great enough to require a "full dress" due process hearing prior to the Agency's initial decision as to the conditions of a NPDES permit. Thus, under the circumstances presented, the State interest involved is "sufficiently visible and weighty for the State to make its * * * initial decision effective without a predecision administrative hearing." (*Dixon v. Love* (1977), 431 U.S. 105, 115, 52 L. Ed. 2d 172, 181, 97 S. Ct. 1723, 1729.) Therefore, in light of the significant governmental interest at stake and petitioner's access to procedural safeguards both prior to and after the permit becomes effective, we hold that Rule 909(h) does not violate the petitioner's right to due process. *Peabody*, 36 Ill. App. 3d 5, 19.

## V

■■ Petitioner next contends that Rule 910(a)(6) is invalid because it confers substantive rule-making authority to the Agency. Rule 910(a)(6) provides that:

"Prior to promulgation by the Administrator of the U. S. Environmental Protection Agency of applicable effluent standards and limitations pursuant to Sections 301, 302, 306 and 307 of the FWPCA [the Agency shall impose] such conditions as the Agency determines are necessary to carry out the provisions of the FWPCA; * * *."

It is clear that the Pollution Control Board is the exclusive rule-making body under the terms of the Environmental Protection Act. Petitioner contends that the Board alone is given the express statutory authority to promulgate effluent standards "specifying the maximum amounts of concentrations, and the physical, chemical, thermal, biological and radioactive nature of [the] contaminants that may be discharged into the waters of the State * * *." (Ill. Rev. Stat. 1975, ch. 111½, par. 1013(a)(ii).) Thus, petitioner argues Rule 910(a)(6) must be viewed as an unlawful redelegation by the Board of its own rule-making powers to the Agency. We disagree.

Petitioner also argues that Rule 910(a)(6) is invalid because section 5(b)

of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1005(b)) specifically provides that "[t]he Board shall determine, define and implement the environmental control standards applicable * * * and may adopt rules and regulations in accordance with Title VII of this Act." Thus, petitioner contends the Board's delegation to the Agency of its authority to set the standards and conditions "prior to promulgation by the Administrator of the U. S. Environmental Protection Agency of applicable standards and limitations" (Rule 910(a)(6)) is invalid.

Petitioner cites *Commonwealth Edison Co. v. Pollution Control Board* (1974), 25 Ill. App. 3d 271, 323 N.E.2d 84, in support of this contention, where the First District of this court found the Board's attempted redelegation of its rule-making authority to the Agency for promulgating new ambient air quality standards to be invalid. The Illinois Supreme Court disagreed, however, and determined that the Board did not delegate its authority to establish ambient air quality standards to the Agency. Instead, the court found the Board had issued a directive to the Agency to maintain the existing ambient air quality, even if the air quality was higher than the Board's "unless lowering it was justified by 'necessary economic and social development and will not interfere with or become injurious to human health or welfare'." *Commonwealth Edison Co. v. Pollution Control Board* (1976), 62 Ill. 2d 494, 497-98, 343 N.E.2d 459, 461-62.

The Board argues that Rule 910(a)(6) is valid because the General Assembly gave the Agency the initial authority to issue NPDES permits and impose "those terms and conditions, including but not limited to schedules of compliance, which may be required to accomplish the purposes and provisions of this Act." (Ill. Rev. Stat. 1975, ch. 111½, par. 1039(b).) The Board contends that to be consistent with this delegation of authority in section 39(b), it is necessary that Rule 910(a)(6) provide that the Agency initially determine the conditions necessary to carry out the provisions of the FWPCA.

We have examined the applicable provisions and have determined that Rule 910(a)(6) is a directive from the Board to the Agency consistent with the Agency's authority under section 39(b) to set standards for the issuance of NPDES permits. (*Commonwealth Edison v. Pollution Control Board,* 62 Ill. 2d 494, 497-98.) There is no redelegation of authority by the Board to the Agency because the Agency already had the power consistent with section 39(b) to issue permits containing "those terms and conditions * * * which may be required to accomplish the purposes and provisions of this Act." (Ill. Rev. Stat. 1975, ch. 111½, par. 1039(b).) We cannot see where Rule 910(a)(6) is in conflict with the Agency's specific statutory grant of authority to issue permits and set standards and conditions "for the discharge of contaminants from point

sources into navigable waters." (Ill. Rev. Stat. 1975, ch. 111½, par. 1039(b).) Therefore, we find no unauthorized delegation of the Board's authority. Instead, we find a directive from the Board to the Agency consistent with the Agency's grant of authority to set the conditions and terms for the issuance of NPDES permits under section 39(b) of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1039(b)).

We further find that in adopting Rule 910(a)(6), the Board properly gave to the Agency the authority consistent with section 39(b) to determine the conditions necessary to carry out the provisions of the Act "prior to promulgation by the Administrator of the U. S. Environmental Protection Agency of applicable effluent standards and limitations pursuant to Sections 301, 302, 306 and 307 of the FWPCA." We feel this interpretation is consistent with the ultimate statutory authority vested in the Board to review the contested conditions and terms of the Agency's permits. Petitioner's interpretation would lead to the result of the Agency's setting standards and conditions as statutorily required under section 39(b), which are necessary "to accomplish the purposes and provisions of this Act." (Ill. Rev. Stat. 1975, ch. 111½, par. 1039(b).) Under petitioner's interpretation of Rule 910(a)(6), however, the Agency would not be able to set conditions and standards which are necessary to carry out the provisions of the FWPCA prior to their promulgation by the Federal Adminstrator. Such a result would not be in keeping with the Agency's permit granting power and the purpose of the Act.

In addition, we see no conflict between Rule 910(a)(6) and the general grant of authority given the Board under section 5(b) to determine the environmental control standards and rules and regulations for the State of Illinois. The Board still will have the power to review all contested standards and regulations established by the Agency on review of the Agency's issuance of NPDES permits under Rule 502(b). We therefore conclude that Rule 910(a)(6) is valid.

Also, we decline to follow *Peabody* to the extent that that court found Rule 910(a)(6) to be invalid and void as an unauthorized delegation of the Board's rule-making power.

### VI

■■ Petitioner's next contention is that Rule 910(1) is invalid to the extent that it effectuates an unilateral modification in a NPDES permit without an opportunity for a due process hearing. Rule 910(1) is required by 40 Code of Federal Regulations, section 125.22(a)(6), and provides that:

> "Any NPDES permit issued shall include as a condition that if a toxic effluent standard or prohibition (including any schedule of

compliance specified in such effluent standard or prohibition) is established under Section 307(a) of the FWPCA for a toxic pollutant which is present in the permittee's discharge and such standard or prohibition is more stringent than any limitation upon such pollutant in the NPDES permit, the Agency shall revise or modify the permit in accordance with the more stringent standard or prohibition and shall so notify the permittee."

It is clear that the parties affected by the ban on a toxic pollutant may participate in the Federal hearings prior to the implementation of the new toxic pollutant standard (33 USC §1317 (1975 Supp.)), and the parties may also obtain judicial review of the new toxic regulations (33 USC §1369 (1975 Supp.)). (*Peabody*, 36 Ill. App. 3d 5, 21.) In addition, after the Agency modifies the NPDES permit to conform with the new toxic effluent standards adopted at the Federal hearings, the permit holder or applicant, as we interpret Rule 502(b), may seek review of the new permit's conditions and limitations by the Board. It is apparent, therefore, that petitioner's procedural due process rights are sufficiently protected under Rule 910(1). Thus, petitioner's due process argument is totally without merit.

## VII

Petitioner's final contention is that Rule 910(1) is also invalid because it conflicts with the FWPCA and the Illinois Act. Petitioner's argument is that section 402(k) of the Federal Act provides that a NPDES permit holder shall be deemed to have complied with the Federal Act except for those standards subsequently promulgated for a toxic pollutant injurious to human health. However, under Rule 910(1), petitioner argues, an Illinois NPDES permit holder shall be deemed to have complied with all the requirements of the Illinois Act except for those standards subsequently promulgated for any toxic pollutant, regardless of whether *it is or is not injurious to human health.* Petitioner recognizes that Rule 910(1) is nearly a verbatim portion of Federal regulation 40 CFR §124.45(g), which sets forth the State NPDES permit program requirements. It nevertheless contends that 40 CFR §124.45(g) is inconsistent with section 402(k) of the Federal Act and further argues that the incorporation of Rule 910(1) into the Illinois NPDES regulations is in violation of the legislature's intent that the Illinois NPDES regulations be consistent with the Federal Act.

We cannot agree with petitioner's interpretation of section 402(k), that Congress intended by this express provision that only those toxic pollutants injurious to human health could be subsequently incorporated into a permit holder's permit after the permit was issued, and all other toxic pollutants standards subsequently adopted could *not* be

incorporated into its permit if they were not injurious to human health. This same argument was found by the *Peabody* court to be incongruous to the express intent of Congress in giving the states the authority to issue NPDES permits and to modify the imposed conditions where it is necessary to reduce or eliminate even permitted discharges. (33 USC §1342(b)(1)(C)(iii)(1975 Supp.).) *Peabody*, 36 Ill. App. 3d 5, 22.

We believe that Rule 910(1) is valid and that the discussion and citations contained in the opinion of the Fifth District on this issue are appropriate and persuasive. We conclude that Rule 910(1) is consistent with the FWPCA and the Federal regulations as required by section 13(b) (Ill. Rev. Stat. 1975, ch. 111½, par. 1013(b)(i)) in that it complies with 40 Code of Federal Regulations §124.45(g), and provides for "a State plan to insure permit modification for all toxic pollutant standards." *Peabody*, 36 Ill. App. 3d 5, 22.

For the reasons stated, we affirm the Board's adoption of Rule 410(b), Rule 909(h), Rule 910(a)(6) and Rule 910(1) and further find that these rules are valid.

Judgment affirmed.

SEIDENFELD and NASH, JJ., concur.