BORG-WARNER CORPORATION, Plaintiff-Appellee, *v.* MICHAEL M. MAUZY, Director, Illinois Environmental Protection Agency, *et al.*, Defendants-Appellants.

Third District    No. 81-13

Opinion filed October 8, 1981.

Tyrone C. Fahner, Attorney General, of Chicago (Nancy J. Bennett, Assistant Attorney General, of counsel), for appellants.

Johnnine Brown Hazard and James T. Harrington, both of Rooks, Pitts, Fullagar and Poust, of Chicago, and Michael T. Reagan, of Hupp, Irion and Reagan, of Ottawa, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal by the Illinois Environmental Protection Agency (hereinafter the Illinois EPA) from the circuit court's action in granting injunctive relief and entering declaratory judgment for Borg-Warner Corporation. The court ordered the Illinois EPA to grant Borg-Warner an adjudicatory hearing on its application for renewal of National Pollution Discharge Elimination System Permit (hereinafter NPDES). It entered a permanent injunction forbidding the EPA from enforcing the 1980 permit until after the EPA had provided Borg-Warner with an adjudicatory hearing, in accordance with the procedures for contested cases set forth in the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1977, ch. 127, par. 1001 *et seq.*). The Illinois EPA appeals from the circuit court's actions, arguing that no adjudicatory hearing is required prior to its determination on the issuance of a NPDES permit. The EPA asserts the court erred in concluding that a hearing was required at that time, and it asserts that error was committed in the granting of summary judgment in the declaratory action and in the imposition of temporary and mandatory injunctions against the EPA.

The record discloses the following pertinent facts. In October 1974 Borg-Warner was issued a NPDES permit from the United States EPA for its Linmar plant. The Linmar plant makes plastic pellets. Water used in the production process is thereafter treated in an activated sludge treatment plant, prior to discharge into the Illinois River. In order to discharge the water into the river, Borg-Warner was required, by Federal legislation, to obtain an NPDES permit. The permit, issued in 1974, set specified conditions concerning discharge points, quantities and concentrations of materials discharged, monitoring techniques, and reporting requirements. The permit was issued for a five-year period, with expiration set for October 31, 1979. It specified that application for reissuance would have to be made within 180 days preceding the date for expiration. Within the time limit for reapplication, as set in the original permit, Borg-Warner submitted its application for reissuance of the NPDES permit. The application, made on May 2, 1979, was submitted to the Illinois EPA, who by

that time had been given authority to administer the NPDES permit system in Illinois. The Illinois EPA took over administration of the NPDES program in Illinois on October 23, 1977, after approval of its procedures was given by the U.S. EPA and after appropriate filing with the Secretary of State's office.

The Illinois EPA issued a permit to Borg-Warner on May 21, 1980, which by its terms was to become effective on June 21, 1980. Prior to issuance of the permit, the agency had submitted, via required public notice, three proposed draft permits. Borg-Warner had submitted objections and extensive comments to each of the proposed draft permits. The objections addressed certain changes in the conditions of the permit from the conditions attached to the original 1974 permit issued by the U.S. EPA. The changed conditions on the permit included new, different, and more stringent limitations on the quantity and concentration of certain materials discharged into the river. In addition to its objections filed in response to each submitted draft permit, Borg-Warner also each time requested an adjudicatory hearing, under provisions of the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1977, ch. 127, par. 1016) (hereinafter APA), which they alleged to be applicable. No adjudicatory hearing was held by the Illinois EPA and the permit, with modified conditions, was issued, as indicated, on May 2, 1980.

Borg-Warner thereafter filed an appeal of the contested conditions of the permit with the Illinois Pollution Control Board, as provided for in the PCB's Rules and Regulations. An adjudicatory hearing was scheduled by the PCB to review the contested permit conditions pertaining to the NPDES permit issued by the EPA. Borg-Warner also sought a stay of any enforcement of the contested conditions, pending resolution of this circuit court action, filed at the same time, which sought a determination of the issue as to whether Borg-Warner was entitled to an adjudicatory hearing, under the Illinois APA, prior to any EPA action on the permit application. Pursuant to the request for a stay of the enforcement of those conditions, the PCB stayed the enforcement and effectiveness of the contested permit conditions until resolution of the case before the circuit court.

The circuit court action, now before us on this appeal, sought a declaratory judgment that the Illinois EPA was required to give Borg-Warner an adjudicatory hearing before making its determination to issue another permit, with modified conditions. Borg-Warner also sought injunctive relief preventing any enforcement of the contested conditions of the permit until after the circuit court had decided the issues. The circuit court eventually entered declaratory judgment for Borg-Warner, declaring that the Illinois EPA was required to give Borg-Warner an adjudicatory hearing before imposing the modified conditions of the NPDES permit. The court entered summary judgment in the case and granted

Borg-Warner its request for a permanent injunction against any enforcement of the contested conditions, until after the Illinois EPA had granted Borg-Warner the required adjudicatory hearing. From these decisions and judgments the Illinois EPA appeals.

Before focusing upon section 16 of the Illinois APA (Ill. Rev. Stat. 1977, ch. 127, par. 1016) which is at the center of the dispute in this case, a preliminary issue is raised concerning application of the provisions of the Illinois APA to the NPDES permit process. Section 2 of the APA (Ill. Rev. Stat. 1977, ch. 127, par. 1002) states:

> "Applicability. This Act applies to every agency as defined herein. Beginning January 1, 1978 in case of conflict between the provisions of this Act and the Act creating or conferring power on an agency, this Act shall control. However if an agency has existing procedures on July 1, 1977 specifically for contested cases or licensing those existing provisions control, except that this exception respecting contested cases and licensing does not apply if the Act creating or conferring power on the agency adopts by express reference the provision of this Act * * *."

The Illinois EPA argues that it had existing procedures for NPDES licensing and for contested cases on July 1, 1977, and therefore, under the above stated statutory exception, the APA's provisions do not apply. Specifically, the EPA asserts that the PCB's Rules and Regulations on Water Pollution, being Rules 901-916, provided for NPDES licensing and that they were applicable prior to July 1, 1977. We disagree.

While those rules, which govern the NPDES permit system, were adopted by the PCB in 1974, by their own terms they were not to become effective until "the date when the Board files with the Secretary of State a copy of the letter approving the Illinois NPDES program by the Administrator of the United States Environmental Protection Agency pursuant to Section 402(b) of the FWPCA." It is undisputed that the letter of approval, predicatory to effectiveness of the Rules, was not filed with the Secretary of State until October 1977. Thus, as of July 1, 1977, the pertinent date for exceptions to the applicability of the APA, there were no existing procedures for NPDES licensing. Until October of 1977, the U.S. EPA, not the Illinois EPA, made NPDES permit decisions. Since there existed no effective Illinois procedures for handling NPDES permits as of July 1, 1977, the provisions of the Illinois APA are applicable.

The next issue, and the central one on this appeal, is whether section 16 of the APA (Ill. Rev. Stat. 1977, ch. 127, par. 1016) requires that the EPA provide Borg-Warner with an adjudicatory hearing *prior to* its issuance of a renewed NPDES permit which contains significant changes in the conditions imposed upon permittee Borg-Warner. Section 16 states:

> "Licenses. (a) When any licensing is required by law to be pre-

ceded by notice and opportunity for hearing, the provisions of this Act concerning contested cases shall apply.

(b) When a licensee has made timely and sufficient application for the renewal of a license or a new license with reference to any activity of a continuing nature, the existing license shall continue in full force and effect until the final agency decision on the application has been made unless a later date is fixed by order of a reviewing court.

(c) No agency shall revoke, suspend, annul, withdraw, amend materially, or refuse to renew any valid license without first giving written notice to the licensee of the facts or conduct upon which the agency will rely to support its proposed action, and an opportunity for hearing in accordance with the provisions of this Act concerning contested cases. At any such hearing, the licensee shall have the right to show compliance with all lawful requirements for the retention, or continuation or renewal of the license. If, however, the agency finds that the public interest, safety or welfare imperatively requires emergency action, and if the agency incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action which proceedings shall be promptly instituted and determined.

Any application for renewal of a license which contains required and relevant information, data, material or circumstances which were not contained in an application for the existing license, shall be subject to the provisions of Section 16(a) of this Act."

Borg-Warner argues, and the circuit court found, that a hearing was required under both section 16(a) and section 16(c) prior to EPA action on the NPDES permit. Under section 16(a), the predicate to application of the contested case provisions of the APA is a legal requirement that the licensing be preceded by notice and opportunity for a hearing. Section 16(a) does not, of itself, establish a right to a hearing. Rather, it directs that the contested case procedural requirements apply where such a hearing is otherwise legally required to be afforded an applicant before a decision on a license. As used in the APA, a legal requirement that action be preceded by notice and "opportunity for a hearing" indicates a situation wherein an applicant is entitled to be afforded a hearing, if he so desires it. The contested cases provisions are not implicated where the ultimate decision on whether to hold a hearing is left to the discretion of the agency.

In this case, the circuit court concluded that the legal requirement of a hearing prior to agency action was to be found in Section 402(a) of the Federal Water Pollution Control Act (33 U.S.C. §1342(a) (1980)), in

section 909 of the Water Rules and Regulations of the Illinois EPA, and in the due process clause of the State and Federal constitutions. It is to these asserted bases for application of section 16(a) that we now turn.

Water Rule 909(a), as adopted by the Illinois PCB and as is applicable to the NPDES permit application involved in this case, states:

"(1) The agency shall hold a public hearing on the issuance or denial of an NPDES Permit or group of permits whenever the Agency determines that there exists a significant degree of public interest in the proposed permit or group of permits (instances of doubt shall be resolved in favor of holding the hearing) to warrant the holding of such a hearing.

(2) Any person, including the applicant, may submit to the Agency a request for a public hearing or a request to be a party at such a hearing, to consider the proposed permit or group of permits. Any such request for public hearing shall be filed within the 30-day public comment period and shall indicate the interest of the party filing such a request and the reasons why a hearing is warranted."

It is apparent from the language of this Rule that the decisions as to whether to hold a public hearing is to be made by the Agency, based upon its determination as to the existence of a significant degree of public interest in the permit or group of permits. It is a discretionary decision to be made by the Agency. Rule 909(a)(2) establishes that the party requesting a public hearing has the burden of showing why it is warranted. Certainly, agency action on a decision is reviewable, subject to an abuse of discretion standard, but the availability of review over the determination does not alter the essentially discretionary nature of the determination. Since the public hearing provided for in Rule 909(a) is discretionary with the EPA, that rule is not a basis for invoking the APA's section 16(a). As noted, before application, through section 16(a), of the contested case provisions to licensing, it is necessary that a hearing be required by law to precede the licensing. Water Rule 909(a) does not require such a hearing.

Borg-Warner next argues that section 402 of the FWPCA legally requires a hearing before agency action on a NPDES permit application. Section 402(a)(1) states, in pertinent part, that the "Administrator may, after opportunity for public hearing, issue a permit for the discharge of any pollutant." (33 U.S.C. §1342(a) (1980).) Section 402(b) of the FWPCA provides that the U.S. EPA may authorize a State to administer the NPDES program if the State program has authority, among other things, to provide opportunity for public hearing before ruling on such application. (33 U.S.C. §1342(b) (1980).) Federal regulations put into effect the notice and hearing requirements of section 402(a) as applied on the Federal level. (40 CFR parts 124, 125 (1981).) The Federal regulations set

forth a regulatory scheme, with respect to opportunity for public hearing, substantially similar to that adopted by the PCB in Illinois.

Under the regulations, the EPA may issue a NPDES permit without first holding an adjudicatory hearing at the request of the applicant. The Federal regulations provide that notice must be sent out and published, and they also provide that if the Regional Administrator "finds a significant degree of public interest in a proposed permit" he is to hold a public meeting at which interested parties may submit oral or written statements and data. (40 CFR part 125.34 (1981).) Holding of a public hearing prior to action on a permit application is a discretionary decision left to the Regional Administrator. The only adjudicatory hearing requirement under Federal regulations comes *after* the EPA's decision on a permit.

40 CFR part 125.36 (1981) gives any interested party 20 days, after a determination by the EPA on a permit, in which to request an "adjudicatory hearing" or a "legal decision" with respect to that EPA determination. If such a request is made, then the effectiveness of the permit is automatically stayed, until after such hearing has been held or decision rendered. (40 CFR part 125.35(d)(2) (1981).) The statutory scheme and the EPA's implementing regulations have been upheld as valid and fully consistent with the legislative purpose in the FWPCA. (*Costle v. Pacific Legal Foundation* (1980), 445 U.S. 198, 63 L. Ed. 2d 329, 100 S. Ct. 1095.) In *Costle*, the United States Supreme Court thus upheld an interpretation of Section 402(a)'s requirement for opportunity for hearing which (1) provides only for a discretionary public hearing before the issuance of a permit, and (2) provides for an adjudicatory hearing, before a different body, after issuance of a permit. The Illinois regulatory scheme over NPDES permits is substantially similar. Under it, as already noted, the EPA is given the power to hold a public hearing prior to its decision on a permit, when it determines that a significant degree of public interest warrants it. (Water Rule 909(a)(1).) If a hearing is held, the EPA decision is made after the hearing. If no hearing is held, the decision is rendered after the period for notice and comment has ended. In the instant case, prior to its determination, the EPA submitted three draft permits and received considerable comment and response from applicant Borg-Warner. Under the Illinois scheme, approved by the U.S. EPA, as required by Federal statute, after the Illinois EPA determination on a permit, the party seeking a permit may appeal the EPA decision to the Illinois PCB. (Water Rule 911; Procedural Rule 502(b), PCB's Rules and Regulations.) Such an appeal to the PCB includes a right to an adjudicatory hearing before the PCB. That hearing is conducted under rules for adjudicatory cases, and the PCB may make a decision *de novo* on the permit application. In addition, the PCB may, under its procedural rules,

stay enforcement of any permit decision by the EPA, pending its review over that action.

Such an appeal to the PCB was made by Borg-Warner in this case, and an adjudicatory hearing before the PCB is available to Borg-Warner, regardless of our decision with respect to the existence of a hearing requirement *prior to* the Illinois EPA's decision on the permit application. We also note that the PCB granted a stay of the permit conditions that are contested, pending resolution of this circuit court action. As will be discussed more fully later on in this opinion, the effectiveness of the contested permit conditions would have to be stayed under section 16(b) of the APA in any event.

It is our conclusion that the Illinois regulations implementing section 402 of the FWPCA are valid and that they satisfy the hearing requirements of Section 402(a). There is no requirement in section 402(a) that an adjudicatory hearing be held prior to the time the EPA makes its determination on a permit application. (*Costle v. Pacific Legal Foundation* (1980), 445 U.S. 198, 63 L. Ed. 2d 329, 100 S. Ct. 1095.) Borg-Warner relies upon two Federal cases in support of its claim that an adjudicatory hearing is required before action by the EPA. (*United States Steel Corp. v. Train* (7th Cir. 1977), 556 F.2d 822; *Marathon Oil v. EPA* (9th Cir. 1977), 564 F.2d 1253.) Both of these cases involved the Federal regulatory scheme which offers an adjudicatory hearing *after* an initial U.S. EPA determination on a permit application. Both cases held that certain procedural requirements of the Federal APA are applicable to that adjudicatory hearing, but neither case found that an adjudicatory hearing was required prior to EPA action determining the permit application. As noted, the regulatory scheme on the Federal level has been approved by the United States Supreme Court in *Costle* and, as to hearing requirements, that scheme has essentially been adopted in Illinois.

Borg-Warner's next argument in support of the required adjudicatory hearing before any agency action on a permit is that such hearing is required by due process considerations. This issue has been decided by several Illinois Appellate Courts which have addressed the question. (*United States Steel Corp. v. Pollution Control Board* (1977), 52 Ill. App. 3d 1, 367 N.E.2d 327; *Peabody Coal Co. v. Pollution Control Board* (1976), 36 Ill. App. 3d 5, 344 N.E.2d 279.) Both cases held that the Illinois regulatory scheme for NPDES permits comports with due process requirements. As stated in *United States Steel Corp.*:

> "Petitioner also contends that administrative procedural due process is satisfied only where 'the requisite hearing is held before the final order becomes effective.' [Citations.] Petitioner argues that the terms of the permit which make it effective prior to the oppor-

tunity for a due process hearing fail to satisfy the procedural due process requirement of *Bell v. Burson* (1971), 402 U.S. 535, 29 L. Ed. 2d 90, 91 S. Ct. 1586.

Substantially, these very same arguments contesting the validity of Rule 909(h) were addressed by the Fifth District of this court in *Peabody*, 36 Ill. App. 3d 5, 16-19. We are in accord with that court's reasoning and holding as applies to this issue only. In *Peabody*, the court found Rule 909(h) was valid. The *Peabody* court further determined that:

> 'The government's interest in making permits effective when issued is great, as it allows the government to restrict the amount of pollutants being discharged into the waters of Illinois. This in turn promotes the State's interest in protecting the public health and environment. Without this requirement permit applicants could postpone a permit's effective date until all administrative and judicial appeals were completed, perhaps several years.' [Citation.]

In addition, the court found that the procedural safeguards, which are also present in the instant case, were sufficient to protect petitioner's due process rights. * * *." (52 Ill. App. 3d 1, 8.)

Borg-Warner argues that because it was issued an original license, and the current case involves a renewal of an originally issued license, that, therefore, due process requires a stay of the effectiveness of the renewal permit, until after its hearing before the PCB. It argues that because it had obtained the original license, greater due process requirements ought to be afforded it than where a party is applying for a permit for the first time. We need not reach the question of whether due process requires a stay of the effectiveness of a renewal permit until after the PCB's decision following the hearing. Under applicable Illinois statutes, such a stay of the effectiveness of a renewal permit is required. Section 16(b) of the Illinois APA provides that "when a licensee has made timely and sufficient application for the renewal of a license or a new license with reference to any activity of a continuing nature, the existing license shall continue in full force and effect until the final agency decision on the application has been made unless a later date is fixed by order of a reviewing court." (Ill. Rev. Stat. 1977, ch. 127, par. 1016.) In this case Borg-Warner made application for renewal of its NPDES permit, that application was timely and sufficient on the record before us, and therefore its original permit continues in effect until final action on the application by the administrative bodies charged with making the determination. A final decision, in the sense of a final and binding decision coming out of the administrative process before the administrative agencies with decision making power, will not be forthcoming in the instant case until the PCB rules on the

permit application, after Borg-Warner has been given its adjudicatory hearing before the PCB. Thus, until that time, under section 16(b), the effectiveness of the renewed permit issued by the EPA is stayed.

In summary, we find no requirement, either in Federal law or State rules and regulations, that an adjudicatory hearing be held *before* a determination by the Illinois EPA on a NPDES permit application. As such, the prerequisite for applying the contested case provisions of the Illinois APA, under section 16(a), is not present.

Having determined that section 16(a) of the Illinois APA is not applicable to the NPDES permit process herein at issue, we turn next to section 16(c), set out previously in the opinion. The first paragraph begins by stating:

> "No agency shall revoke, suspend, annul, withdraw, amend materially, or refuse to renew any valid license without first giving written notice to the licensee * * *, and an opportunity for hearing in accordance with the provisions of this Act concerning contested cases."

The first part of this language obviously deals with situations wherein an agency has already granted a license and that license is still in effect. Having granted a license, no agency, during the effective period of that license, may revoke, suspend, annul, withdraw or materially amend the license, unless it first gives the licensee holding the valid license notice and opportunity for a hearing. Neither may an agency, under language of first paragraph of section 16(c), refuse to renew a license that would otherwise be routinely or perfunctorily renewed, unless it gives notice and opportunity for hearing to the licensee before such action. That the language with respect to renewals in the first paragraph of section 16(c) is meant to apply to situations wherein renewal is normally routine and perfunctory can be seen when the second paragraph of section 16(c) is examined.

It states:

> "Any application for renewal of a license which contains required and relevant information, data, material or circumstances which were not contained in an application for the existing license, shall be subject to the provisions of Section 16(a) of this Act."

This language has application to renewals which are not routine and perfunctory. It applies in those cases wherein application for renewal is required to be accompanied by information, data or material different from that contained in the application for the original license. Thus, if an applicant is required to submit additional or different data from that originally submitted, then section 16(a) applies. However, as already determined, section 16(a) requires as a predicate to its application of the uncontested case provisions that there be a legal requirement of a hearing before agency action.

In the instant case, Borg-Warner's reapplication for the NPDES permit comes within the ambit of the second paragraph of section 16(c). Borg-Warner was applying for renewal of its permit, but it could not rely upon the information and data it had submitted in the 1974 application. This 1979 permit application required Borg-Warner to submit information and data concerning current discharges, current operation levels and methods, current abilities to comply with regulations, and current compliance record under the old permit. NPDES permits, so far as the record indicates, are not routinely renewed every five years, based upon material submitted in the original application. Thus, the renewal in such cases comes under second paragraph of section 16(c). Thereby, section 16(a) is brought into the process. However, as already determined, section 16(a) only requires the contested case procedural rules where a hearing is otherwise required by law to precede licensing. Section 16(a), as noted, creates no rights to a hearing by its own terms. Therefore, the next inquiry as to what is required under section 16(a) must be whether there is a separate legal requirement for a hearing preceding agency action. In our previous discussion of section 16(a)'s application we have already determined that no hearing is required, under either State or Federal law, prior to the time the EPA makes its determination of a permit. As such, section 16(a), as invoked through section 16(c), does not require an adjudicatory hearing prior to agency action on a NPDES renewal permit application.

The trial court erred in concluding that an adjudicatory hearing was required under section 16 of the APA, and its declaratory judgment setting forth that conclusion is reversed. The APA's section 16 requires no adjudicatory hearing prior to EPA determination of Borg-Warner's application for a renewed NPDES permit. Furthermore, since the basis for the grant of injunctive relief was the court's conclusion that a hearing was required prior to the EPA determination, the orders of the circuit court granting such relief are hereby reversed as well. The cause will be remanded for further proceedings within the administrative context, specifically for the requested adjudicatory hearing before the PCB. As already discussed, the effectiveness of the 1979 permit issued by the EPA is stayed under provision for such stay in section 16(b) of the Illinois APA. Ill. Rev. Stat. 1977, ch. 127, par. 1016(b).

We would note, in conclusion, that despite our reversal of the circuit court's decision, Borg-Warner is nevertheless in essentially the same position it found itself in following that order. That is, it shall receive an adjudicatory hearing on its permit renewal application prior to the time that renewed permit becomes effective.

The decision of the Circuit Court of La Salle County is reversed, and the cause is remanded for further proceedings in accordance with the views expressed in this opinion.

Reversed and remanded with directions to proceed in accordance with views in this opinion.

SCOTT, P. J., and HEIPLE, J., concur.