GRANITE CITY DIVISION OF NATIONAL STEEL COMPANY *et al.*, Petitioners, v. THE POLLUTION CONTROL BOARD, Respondent.—USS DIVISION OF USX CORPORATION, Petitioner, v. THE POLLUTION CONTROL BOARD, Respondent.

Fifth District No. 5—90—0101

Opinion filed October 15, 1991.

James T. Harrington, Heidi E. Hanson, David L. Rieser, Joshua M. Levin, and Darren J. Hunter, all of Ross & Hardies, of Chicago, and Eric R. Robertson, of Lueders, Robertson & Konzen, of Granite City, for petitioners.

Roland W. Burris, Attorney General, of Springfield (Rosalyn Kaplan, Solicitor General, and James L. Morgan, Assistant Attorney General, of counsel), for respondent.

JUSTICE HARRISON delivered the opinion of the court:

In a rulemaking proceeding designated as R88-21, Dockets A and B, the Illinois Pollution Control Board (the Board) adopted various amendments to its existing water quality regulations as codified in Title 35, Subtitle C, of the Illinois Administrative Code (35 Ill. Adm. Code §§301 through 309 (1985)). The amendments made in R88-21,

Docket A, were adopted in an opinion and order entered by the Board on January 25, 1990, while those made in R88-21, Docket B, were adopted in an opinion and order entered by the Board on June 21, 1990.[1] Petitioners, the Granite City Division of National Steel Company, Laclede Steel Company, USS Division of USX Corporation, and the Illinois Steel Group, filed separate petitions in the appellate court to obtain judicial review of these amendments. (See Ill. Rev. Stat. 1989, ch. 111½, pars. 1029(a),1041.) Their petitions have been consolidated and are now before us for consideration on the merits. We find the challenged amendments to be valid and therefore affirm.

 █ Title 35, Subtitle C, Part 302 of the Illinois Administrative Code, as amended, sets forth the water quality standards applicable to the surface waters of this State. It provides that "[w]aters of the State shall be free from any substances or combination of substances in concentrations toxic or harmful to human health, or to animal, plant or aquatic life." (35 Ill. Adm. Code §302.210 (*pending*).) As was done under the previous version of the regulations, the maximum allowable concentrations for certain substances, such as arsenic, cyanide, and zinc, are expressed by the regulations in numeric terms. (35 Ill. Adm. Code §302.208 (*pending*).) For all other toxic substances, however, a new "narrative" standard has been created. (35 Ill. Adm. Code §302.210 (*pending*).) Under the narrative standard, any substance or combination of substances is deemed to be toxic if present in concentrations that exceed any of five basic "criteria" relating to human health, animal, plant and aquatic life. 35 Ill. Adm. Code §§302.210(a) through (c) (*pending*).

█ The criteria established by the narrative standard have no fixed values. Rather, they are to be determined on a case-by-case basis by following the requirements, test protocols and data assessment methods set forth in Subpart F of Subtitle C of Title 35 (35 Ill. Adm. Code §§302.601 through 302.669 (*pending*)). (35 Ill. Adm. Code §302.210(e) (*pending*).) The amended regulations contemplate that criteria will normally be derived under these procedures when a person discharging effluent to surface waters applies to the Illinois Environmental Protection Agency (the Agency) for a National Pollutant Discharge Elimination System (NPDES) permit. The "validity and

---

[1]Throughout this discussion we shall cite to the amended regulations by inserting the word "pending" after the section of the Administrative Code in which they will be published. For example, the amendment which will ultimately be codified at section 302.210 of Title 35 of the Code will be cited here as 35 Ill. Adm. Code §302.210 (*pending*).

correctness of application of numeric criteria derived [by the Agency] pursuant to [these regulations] may be challenged" (1) when the criteria are first applied in the permit proceeding or (2) in an action pursuant to Title VIII of the Environmental Protection Act (Ill. Rev. Stat. 1989, ch. 111½, pars. 1030 through 1034). (35 Ill. Adm. Code §§302.210(e), (f) (*pending*).) The latter statute, entitled "Enforcement," governs the procedures to be followed when an individual is alleged to have violated the Environmental Protection Act (Ill. Rev. Stat. 1989, ch. 111½, par. 1001 *et seq.*) or "any rule or regulation promulgated thereunder, or *** any permit granted by the Agency or any term or condition of any such permit." Ill. Rev. Stat. 1989, ch. 111½, par. 1030.

■ Another feature of the Board's amended regulations is their provision for "mixing zones." Under this provision a discharger may be allowed to comply with the applicable water quality standards, including the new narrative standard, "[by] mixture of an effluent with its receiving waters." (35 Ill. Adm. Code §302.102(a) (*pending*).) The "mixing zone" is that portion of the receiving water where the regulations permit mixing with the effluent to occur. (35 Ill. Adm. Code §302.102(b) (*pending*).) The regulations also include the concept of a "zone of initial dilution" (ZID) in waters within which "effluent dispersion is immediate and rapid." 35 Ill. Adm. Code 302.102(e) (*pending*).

■ The significance of having a mixing zone or ZID recognized is that it alters the point in the receiving waters at which the various water quality standards must be met. Where a mixing zone exists, all water quality standards prescribed by the regulations, both chronic and acute, must be met at every point outside of the area and volume of the receiving water where mixing is allowed. Inside the mixing zone, only the acute toxicity standards of sections 302.208 and 302.210 of the regulations (35 Ill. Adm. Code §§302.208, 302.210 (*pending*)) must be met, subject to the possible existence of a ZID. (35 Ill. Adm. Code §§302.102(c), (e) (*pending*).) Where a ZID is allowed, the acute toxicity standards will not apply within the ZID. (35 Ill. Adm. Code §§302.100, 302.208(c)(1), 302.210(d) (*pending*).) A mixing zone or ZID may be recognized by the Agency as part of an NPDES permit (35 Ill. Adm. Code §§302.102(d), (e) (*pending*)), or a polluter may invoke the mixing zone or ZID rules by way of a defense in an action against him under 35 Ill. Adm. Code §304.205 (*pending*) for violations of the regulations' water quality standards. 35 Ill. Adm. Code §302.102(i) (*pending*).

In this proceeding, petitioners first argue that section 302.210 and Subpart F of the amended regulations (35 Ill. Adm. Code §§302.210, 302.601 through 302.669 (*pending*)), which govern the derivation and application of "criterion" under the narrative standard are invalid. They are invalid, in petitioners' view, because they represent an impermissible attempt by the Board to delegate to the Agency its statutory responsibility for setting water quality standards. This argument is wholly untenable.

■ As we have previously indicated, the regulations provide that the "[w]aters of the State shall be free from any substances or combination of substances in concentrations toxic or harmful to human health, or to animal, plant or aquatic life." (35 Ill. Adm. Code §302.210 (*pending*).) This is the standard. It was set by the Board, and the Agency has been given no authority to alter or vary it. The Agency's responsibility is simply to derive and apply criteria according to detailed guidelines in order to ascertain whether the standard prescribed by the Board is being met. The power of the Agency to apply standards promulgated by the Board for water toxicity inheres in its statutorily mandated authority to enforce the Environmental Protection Act (Ill. Rev. Stat. 1989, ch. 111½, par. 1001 *et seq.*) and the rules and regulations promulgated thereunder (see Ill. Rev. Stat. 1989, ch. 111½, par. 1030), and to issue NPDES permits for the discharge of contaminants (see Ill. Rev. Stat. 1989, ch. 111½, par. 1039(b)). See *United States Steel Corp. v. Illinois Pollution Control Board* (1977), 52 Ill. App. 3d 1, 10, 367 N.E.2d 327, 334-35.

The right of the Agency to derive and apply criteria according to the procedures established by the Board no more constitutes an improper delegation of Board authority than did the rule at issue in *Commonwealth Edison Co. v. Pollution Control Board* (1976), 62 Ill. 2d 494, 497-98, 343 N.E.2d 459, 461-62, which authorized the Agency to lower ambient air quality standards upon proof to the Agency that "such change is justifiable as a result of necessary economic and social development and will not interfere with or become injurious to human health or welfare." We note, moreover, that during the pendency of this proceeding, the General Assembly expressly amended the Environmental Protection Act to incorporate the "criterion" concept. The Act now provides that a criterion is

"the numerical concentration of one or more toxic substances calculated by the Agency as a basis for establishing a permit limitation or violation of a water quality standard pursuant to standards and procedures provided for in board regulations." (Ill. Rev. Stat., 1990 Supp., ch. 111½, par. 1003.80.)

The Act, as amended, further provides that if

"the Agency issues an NPDES permit that imposes limits which are based upon a criterion or denies a permit based upon application of a criterion, then the Agency shall have the burden of going forward with the basis for the derivation of those limits or criterion which were derived under the Board's rules." (Ill. Rev. Stat., 1990 Supp., ch. 111½, par. 1040(a)(1).)

What is significant about this is that in amending the statute as it did, the General Assembly did not deem it necessary to also include some express authorization allowing the Agency to derive and apply criteria. The only reasonable inference that can be made from this is that the General Assembly assumed that such power already existed and was proper at the time the regulations challenged here were promulgated.

■■■ Petitioners next argue that the new narrative standard violates due process because it is vague. Where, as here, a due process vagueness challenge is raised and the first amendment (U.S. Const., amend. I) is not involved, two requirements must be fulfilled. The enactment must give a person of ordinary intelligence a reasonable opportunity to know what conduct is lawful or unlawful, and it must provide standards sufficient to avoid arbitrary and discriminatory enforcement and application. (*In re Summary Suspension of Driver's License* (1989), 187 Ill. App. 3d 27, 36, 542 N.E.2d 1311, 1316.) Establishing that these requirements have been satisfied is not the obligation of the administrative agency, for administrative regulations are presumed to be valid. (*Begg v. Board of Fire & Police Commissioners* (1984), 99 Ill. 2d 324, 331, 459 N.E.2d 925, 928, *cert. denied* (1984), 469 U.S. 818, 83 L. Ed. 2d 33, 105 S. Ct. 86.) Rather, it is the person challenging a regulation who has the burden of showing that it is invalid. (99 Ill. 2d at 332, 459 N.E.2d at 928.) To succeed on a claim that a law or regulation is, on its face, unduly vague in violation of due process, the complainant must demonstrate that the law or regulation is impermissibly vague in all of its applications. (*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 497, 71 L. Ed. 2d 362, 371, 102 S. Ct. 1186, 1193.) Petitioners made no such showing here.

■■ The gist of petitioners' vagueness challenge is simply that different experts following the same procedures set out in Subpart F (35 Ill. Adm. Code §§302.601 through 302.669 *(pending)*) may reach different conclusions in calculating the applicable toxicity criteria in a given situation. During the course of the rulemaking proceedings, evidence was presented which substantiated that such differences could

occur. Indeed, the Board itself acknowledged in its opinion and order of January 25, 1990, that Subpart F contains "some elements of choice about which reasonable experts might be expected to differ." That the potential for such disagreement may exist does not, however, mean that such disagreement will occur in every case. Until the regulations are actually implemented, how much the experts will actually disagree in their calculations is purely speculative. In practice there may well prove to be many situations where the conclusions of the experts are in complete accord. For this reason alone we could not say at this point that the regulations are impermissibly vague in all their applications.

■■■ But that is not the only defect in petitioners' vagueness claim. Petitioners suggest that the constitution requires that predetermined numeric standards be established for all toxins that would be applicable in all situations and that the potential for disagreement under Subpart F's narrative standard is inherently violative of due process. We disagree. Due process does not mandate absolute standards or mathematical precision. Although it does require that a regulation not be vague, indefinite or uncertain, it does not require that a regulation be more specific than is possible under the circumstances. (*In re Ladewig* (1975), 34 Ill. App. 3d 393, 397, 340 N.E.2d 150, 153.) In this case the Board did not believe that a higher degree of specificity was possible. Its view was founded, in part, on a recognition of the inherent uncertainties of toxicological assessment, which it characterized as "a science much burdened by complex, interrelated phenomena that now and into any foreseeable future has to be expected to present instances where reasonable experts are going to disagree." The Board also believed, among other things, that the narrative standard provided a flexibility in dealing with varied and changing circumstances which fixed numeric standards normally could not match. These are questions involving technical judgment and scientific methodology in an area within the Board's expertise. On such questions we will defer to a great extent to the Board (see *Natural Resources Defense Council, Inc. v. United States EPA* (9th Cir. 1988), 863 F.2d 1420, 1430), and petitioners have offered no valid reason why we should second-guess its judgment here.

Contrary to petitioners' fears, polluters will not automatically be subject to sanctions simply because they may have calculated a criterion differently than the Agency. Rather, the regulations give polluters the opportunity of contesting the derivation and application of criteria in the context of both permit applications and enforcement actions (35 Ill. Adm. Code §§302.210(e), (f) (*pending*)), and those pro-

ceedings, in turn, are subject to review by the Board (Ill. Rev. Stat. 1989, ch. 111½, pars. 1031.1, 1040) and the courts (Ill. Rev. Stat. 1989, ch. 111½, par. 1041). Given the availability of such review, the test for vagueness is less strict. (*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 498, 71 L. Ed. 2d 362, 371-72, 102 S. Ct. 1186, 1193.) While mistakes may still be made, the possibility that a regulation may be misapplied in certain circumstances will not, standing alone, render it constitutionally infirm. *O'Connor v. A & P Enterprises* (1980), 81 Ill. 2d 260, 269, 408 N.E.2d 204, 208.

■■ We must also reject petitioners' claim that the Board's rulemaking is invalid because the Board failed to adequately consider "the technical feasibility and economic reasonableness" of its amended regulations, as required by section 27(a) of the Environmental Protection Act (Ill. Rev. Stat. 1989, ch. 111½, par. 1027(a)). When an administrative agency such as the Board exercises its rulemaking powers, it is performing a quasi-legislative function and has no burden of supporting its conclusions with a given quantum of evidence. (*Stepan Co. v. Pollution Control Board* (1990), 193 Ill. App. 3d 827, 833, 550 N.E.2d 682, 685.) On judicial review we therefore need not consider whether the manifest weight of the evidence reveals that the proposed regulations are technically feasible and economically reasonable. A regulation will be upheld if the record simply reflects that these factors were "taken into account." 193 Ill. App. 3d at 834, 550 N.E.2d at 686.

■■ Under section 27 of the Environmental Protection Act (Ill. Rev. Stat. 1989, ch. 111½, par. 1027), the phrase "take into account" is used in its general sense of to "allow for, make allowance for, weigh carefully, consider, take into consideration, bear in mind, remember, realize, appreciate, have in one's mind. [Citation.]" (See *Shell Oil Co. v. Pollution Control Board* (1976), 37 Ill. App. 3d 264, 272, 346 N.E.2d 212, 219.) That standard was certainly satisfied here. Technical feasibility and economic reasonableness were explicitly addressed by the Board in its final order and opinion adopting its amended regulations for water quality standards. Petitioners may disagree with the Board's conclusions, but as the Appellate Court, Third District, recently observed, "[w]e are not a technically qualified superagency ready to determine whether the Board's decision with respect to [the amendments] was right or wrong." *Stepan Co. v. Pollution Control Board* (1990), 193 Ill. App. 3d 827, 834, 550 N.E.2d 682, 686.

■■ ■ Because administrative agencies are inherently more qualified to decide technical problems, this court may not invalidate

an administrative rule or regulation unless it is clearly arbitrary, unreasonable, or capricious. (193 Ill. App. 3d at 833, 550 N.E.2d at 685; *Illinois State Chamber of Commerce v. Pollution Control Board* (1988), 177 Ill. App. 3d 923, 928, 532 N.E.2d 987, 991.) Petitioners argue that the Board's amendments are arbitrary and capricious for a variety of reasons. They assert, for example, that there is insufficient justification in the record for the amendments' adoption, that the amendments violate the constitutional prohibition against *ex post facto* laws, and that they do not include site-specific relief for petitioner Granite City Division of National Steel. Based upon the law and facts presented to us, we can find no merit to these claims. Nor can we find any merit to petitioners' additional arguments that the mixing zone rules are unconstitutionally vague and involve an improper delegation of authority by the Board to the Agency, that the amendments fail to state clear standards to guide decision making by the Agency, and that they fail to provide adequate opportunities for public comment and administrative review. Some of these are variations on petitioners' previous arguments. In any case, they merit no further discussion.

For the foregoing reasons, we affirm the opinion and order of the Board entered on January 25, 1990, in R88-21, Docket A, and its opinion and order entered on June 21, 1990, in R88-21, Docket B.

Affirmed.

CHAPMAN and HOWERTON, JJ., concur.