STATE OF NEW MEXICO, ex rel. Patricia A. MADRID, Attorney General, et al., Plaintiffs,

v.

Bill RICHARDSON, Secretary of the Department of Energy, et al., Defendants.

Environmental Defense Fund, et al., Plaintiffs,

v.

Bill Richardson, Secretary of the Department of Energy, et al., Defendants.

Nos. Civ.A. 91–2527 (JGP), Civ.A. 91–2929 (JGP).

United States District Court, District of Columbia.

March 22, 1999.

## MEMORANDUM ORDER

JOHN GARRETT PENN, District Judge.

These consolidated cases come before the Court on the plaintiffs' **Motion For Construction Of Injunction And For Preliminary Injunction.** The motion is opposed by the defendants. The Court heard arguments on March 12, 1999.

### I

The background of this litigation is as follows: The plaintiffs filed these consolidated cases, hereinafter referred to as the "case," in 1991. At that time, the plaintiffs sought to have the Court enjoin the defendants from introducing hazardous, radioactive waste in an experimental underground facility known as the Waste Isolation Pilot Plant (WIPP). This phase was described as the "test phase." WIPP is located in New Mexico and is a proposed nuclear waste repository operated by the Department of Energy (DOE). The plaintiffs filed a motion for a preliminary injunction and a motion for summary judgment. The Court granted plaintiffs' motion for a preliminary injunction. *State of New Mexico v. Watkins,* 783 F.Supp. 628 (D.D.C.1991). Shortly thereafter, the Court granted plaintiffs' motion for summary judgment and entered a permanent injunction. *State of New Mexico v. Watkins,* 783 F.Supp. 633 (D.D.C.1992). That decision was affirmed in part and reversed in part by the Court of Appeals. *State of New Mexico v. Watkins,* 297 U.S.App.D.C. 122, 969 F.2d 1122 (1992). The defendants canceled the test phase in 1993. The history of the project is set forth in the above opinions and will not be restated here.

Congress enacted the Waste Isolation Pilot Plant Land Withdrawal Act ("WIPP Act"), Pub.L. No. 102–529, 106 Stat. 4777 (1992), as amended by Pub.L. No. 104–201. 110 Stat. 2422 (1996). By that Act, Congress withdrew the WIPP site permanently from public use and reserved the WIPP lands "for the construction, experimentation, operation, repair and maintenance, disposal ... and other authorized activities associated with the purposes of WIPP as set forth in section 213 of the Department of Energy National Security and Military Applications of Nuclear Energy Authorization Act of 1980." WIPP Act § 3. The WIPP Act gave the Environmental Protection Agency (EPA) broad oversight over WIPP's operational cycle.

After the cancellation of the test phase, Congress amended the WIPP Act in 1996 and rescinded most of the test phase provisions. On or about February 9, 1996, EPA issued the WIPP compliance criteria, a step toward certification. 61 Fed.Reg. 5224 (Feb. 9, 1996). The Court of Appeals upheld those criteria. *State of New Mexico v. Environmental Protection Agency,* 324 U.S.App.D.C. 436, 114 F.3d 290 (1997). In May 1998, EPA issued a final rule certifying that WIPP complied with the disposal standards. 63 Fed.Reg. 27,354, 27,405 (May 18, 1998). In May 1998, DOE notified Congress that EPA had issued its final certification decision and that EPA had determined that WIPP is in compliance will all statutory and regulatory requirements. At the same time, the defendants notified that Court that they intended to ship certain non-mixed legacy debris, identified as "TA–55–43, Lot No. 01" waste from the Los Alamos National Laboratory (LANL) to WIPP. The defendants allege that DOE has determined and the New Mexico Environmental Department (NMED) has confirmed that this waste is "non-mixed" which means that it is non-hazardous waste as defined by the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. §§ 6901–6922k. It is the proposed shipment of TA–55–43, Lot No. 1 waste that brought about the present litigation in this case.

The plaintiffs ask the Court to (1) construe the injunction issued by the Court in 1992 to prohibit shipments of radioactive waste planned and announced by the DOE

and which was originally scheduled to be made on June 19, 1998 and, (2) to prohibit such shipments pending the final determination of this case on the independent ground of "threatened and impending violations of the New Mexico Hazardous Waste Act", NMSA 1978 §§ 744–4–1 *et seq* (HWA), which governs the disposal of hazardous waste at WIPP and effectuates RCRA in New Mexico. The plaintiffs contend that "DOE's plan to introduce waste violates (a) the Court's existing order, dated January 30, 1992, (b) HWA regulations requiring that a facility receiving hazardous waste have an operating permit, and (c) HWA regulations forbidding receipt of waste by a facility, like WIPP, which does not have a permit or interim status." Motion at 4. The plaintiffs filed a motion to amend their complaint and their motion for a preliminary injunction in June 1998. The parties, with the approval of the Court, agreed that the defendants would not ship the waste to WIPP until eleven days after a hearing on the motion for a preliminary injunction, absent a further order by the Court. They also agreed that the defendants would not be required to reply to the motion for injunctive relief until later in 1998. One reason for the delay was to allow NMED to complete certain tests on samples taken from TA–55–43, Lot No. 01. The defendants filed their opposition to the motion for a preliminary injunction in December 1998. The plaintiffs filed their reply to the defendants' opposition in February 1999.

The defendants respond to the motion by arguing that the Court's 1992 injunction does not bar DOE from shipping non-mixed transuranic waste to WIPP, and that the plaintiffs have failed to establish that a preliminary injunction is appropriate in this case.

## II

In order to be entitled to a preliminary injunction, the plaintiffs must demonstrate that (1) they have a strong likelihood of prevailing on the merits, (2) they

will suffer irreparable injury in the event injunctive relief is not granted, (3) the other parties interested in the proceedings will not suffer substantial harm in the event injunctive relief is granted, and (4) the public interest favors the granting of injunctive relief. *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 182 U.S.App.D.C. 220, 222, 559 F.2d 841, 843 (1977). "The court is not required to find that ultimate success by the movant is a mathematical probability, and indeed, [the court], may grant [an injunction] even though its own approach may be contrary to [movants'] view of the merits. The necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other factors." *Id.*

### A. The likelihood of prevailing on the merits.

#### 1. The effect of the 1992 injunction entered by this Court.

The plaintiffs raise several issues that relate to the question of whether they are likely to prevail on the merits. First, the plaintiffs ask the Court to construe the injunction it issued in this case on February 3, 1992, as prohibiting the shipment waste from TA–55–43, Lot No. 01. In order to address that issue, the Court must review the permanent injunction entered in 1992.

The plaintiffs filed this action in 1991. At that time they were attempting to prevent DOE from placing radioactive waste in WIPP in a phase referred to as the "test phase." DOE proposed to place the waste in WIPP temporarily, and then remove it from the underground facility. The plaintiffs filed a motion for a preliminary injunction and a motion for summary judgment. In their motion for a preliminary injunction, the plaintiffs' primary concern was that once the waste was placed in WIPP, it was likely that the DOE would be unable to retrieve it due to the instability of the room in WIPP where it was to be

placed. This Court granted a preliminary injunction on December 13, 1991. *State of New Mexico v. Watkins*, 783 F.Supp. 628. On February 3, 1992, the Court granted plaintiffs' motion for summary judgment and permanently enjoined DOE "from proceeding with Public Land Order 6826 issued on January 22, 1991." *State of New Mexico v. Watkins*, 783 F.Supp. 633, 639. In granting a preliminary injunction, this Court noted that "Congress has not yet permanently withdrawn the WIPP site for disposal and storage of defense generated nuclear waste. In fact, at the very same time that the DOI [Department of Interior] administratively extended the terms of a previous withdrawal of WIPP to include a new purpose, Congress is in the process of determining whether a permanent withdrawal for such purpose is appropriate." 783 F.Supp. at 630. Moreover, the Court observed that: "The proposed legislation provides that the Secretary may not transport any transuranic radioactive waste to WIPP to conduct test phase activities until certain requirements, *including compliance with [EPA] standards, have been met.*" 783 F.Supp. at 631 (emphasis not in the original). A review of this Court's Memorandum granting the preliminary injunction makes clear that there were three primary concerns; first, the test phase was not authorized, second, a concern whether the test waste once deposited at WIPP could thereafter be retrieved, and third, Congress was considering new legislation. The preliminary injunction maintained the status quo until the Court could carefully weigh the arguments raised by the plaintiffs' motion for summary judgment. After considering the plaintiffs' motion for summary judgment, the Court concluded that judgment should be entered for the plaintiffs and that the preliminary injunction should be made permanent.

■ Public Land Order 6826, which would have allowed the "test phase," was a modification of an earlier order. 783 F.Supp. at 635. In affirming this Court's

decision, the Court of Appeals noted that this Court's "permanent injunction here, however, *meets the requirement that it match 'the necessities of the particular case.' The injunction at issue simply holds DOE and Interior to the precisely limited permission they sought and received, and to the pledge to Congress they made—to construct a facility, but not to deposit waste until new authority so allows.*" *State of New Mexico v. Watkins*, 297 U.S.App.D.C. 122, 137, 969 F.2d 1122, 1137 (citation omitted). Finally, with respect to the injunction, the Court of Appeals stated: "We correspondingly affirm the district court's final order permanently enjoining DOE and Interior from proceeding with Public Land Order 6826 'insofar as [that order] authorize[s] the introduction of transuranic waste into ... the state of New Mexico.'" 297 U.S.App.D.C. at 138, 969 F.2d at 1138.

It is clear that the injunction entered by this Court and affirmed by the Court of Appeals recognized that the "test phase," as provided by Public Land Order 6826 was not authorized insofar as it permitted the introduction of transuranic waste in WIPP. The injunction was limited to that issue only. In issuing the injunction, this Court recognized that it was very likely that the circumstances would change depending on the action taken by Congress. It is clear that the circumstances have changed since the entry of that order. The injunction entered by this Court in 1992 addressed the matter before the Court *at that time* and nothing more.

The Court holds then that the Court injunction entered in 1992 does not prevent the shipment of TA–55–43, Lot No. 01 waste to WIPP.

### 2. Does WIPP have interim status?

■ The next issue raised by the parties is whether WIPP has interim status. The plaintiffs contend that WIPP does not have interim status and thus the proposed shipment cannot be made to WIPP. The defendants argue that WIPP has interim

status. In addition, the defendants argue that since the waste it intends to ship to WIPP is non-hazardous, interim status is not required in any event.

The background of the issue relating to interim status is set forth in the opinion by the Court of Appeals, *State of New Mexico*, 297 U.S.App.D.C. at 128–133, 969 F.2d at 1127–1133, and need not be repeated here. Suffice it to note that the federal law extended interim status to facilities in existence on the effective date of statutory or regulatory changes under RCRA which allowed the facility to go through the process without being required to shut down in the meantime. This is known as the "trigger date" for the filing of applications for interim status under RCRA. There is a two part application. Part A is an abbreviated document and Part B is a detailed document which describes, in part, how the facility will comply with substantive regulations governing the operation of hazardous waste management facilities. A facility which qualifies for interim status will lose it interim status if it does not meet the deadline for submitting its Part B application. The plaintiffs argue that DOE failed to meet the deadline.

In 1987, New Mexico amended the HWA to specifically exempt radioactive mixed wastes to be placed in WIPP from regulation under HWA. Thereafter, on February 23, 1989, the state repealed the section of the statute exempting WIPP. In July 1990, EPA authorized New Mexico to enforce state law in lieu of RCRA for radioactive mixed waste. The effective date of the authorization was July 25, 1990. DOE contends that July 25, 1990 became the trigger date for filing the Part A and Part B applications. DOE filed its Part A application on January 22, 1991 and its Part B application on February 26, 1991. Assuming that July 25, 1990 was the trigger date, both applications were timely.

The plaintiffs contend that the trigger date was February 23, 1989 and thus, the applications were untimely. It is interesting to note that New Mexico initially agreed that the trigger date was July 25, 1990, a fact also noted by the Court of Appeals. 297 U.S.App.D.C. at 129, 969 F.2d at 1129 ("DOE submitted the permits applications forms within the deadlines set by New Mexico"). That court noted, however, that "[a] year later ... a new state director suggested that the trigger date for DOE's filings was the date [February 23, 1989] New Mexico repealed WIPP's exemption." *Id.* at 1129 n. 10.

The question that is presented is what is meant by "regulatory change." The Court of Appeals stated that "we see nothing in the statute or its legislative history that defines a regulatory change at all." 297 U.S.App.D.C. at 132–33, 969 F.2d at 1132–33. But significantly, the court went on to state: "Because RCRA does not define the type of change that qualifies as a "regulatory change" under the statute, *we defer to EPA's reasonable interpretation, and therefore reverse the district court's decision that WIPP was not eligible for interim status under RCRA.* The precise date of the regulatory change for the WIPP facility is a matter the district court, because of the character of its analysis, did not reach, and we have no occasion to address that question." 297 U.S.App.D.C. at 133, 969 F.2d at 1133 (emphasis this Court's, footnote omitted).

This Court concludes that the regulatory change or trigger date was July 25, 1990. Notwithstanding that New Mexico repealed the exemption for WIPP on February 23, 1989, it did not receive EPA authorization to enforce state law in lieu of RCRA until July 25, 1990. It was the latter date on which the facility was first subjected to RCRA's permit requirements. The agency's interpretation concluding that the date was July 25, 1990 is a reasonable one. Moreover, as noted earlier, that is the date the state had recognized as the trigger date until after DOE filed its Part A and Part B applications. DOE relied on the EPA and the representation of the state as to the dates for filing.

In short, the Court concludes that WIPP has interim status.

### 3. Nature of the proposed shipment.

█ Finally, the Court concludes that the waste in TA–55–43, Lot No. 01 is not hazardous waste under RCRA, so it would appear that even absent interim status for WIPP, DOE may make the shipment. One reason the parties agreed to stay action on the plaintiffs' motion for construction of injunction and for preliminary injunction was to receive a report from NMED, the state agency. The State of New Mexico Environment Department (NMED) stated in a letter dated December 2, 1998 and addressed to DOE as follows:

> Thank you for your response to the New Mexico Environment Department's (NMED) comments dated November 24, 1998 on the report prepared by LANL/DOE entitled "Sampling and Analysis Project Validates Acceptable Knowledge on TA–55–43, Lot No. 01." The report contains information resulting from the sampling and analysis of waste samples collected from waste stream TA–55–43 Lot No. 01.
>
> NMED has determined that LANL/DOE's response to comments and the findings in the LANL/DOE Report provides the information needed to allow the waste specific to TA–55–43, Lot No. 01 *to be managed as non-RCRA wastes.* Any and all other applicable federal, state or local laws, regulations and requirements must still be met by LANL/DOE in the possession and management of this specific waste stream.
>
> NMED's determination is restricted solely to TA–55–43, Lot No. 01 waste as presented in "Los Alamos, Confirmatory Sampling and Analysis Plan for Waste Stream TA–55–43, Lot No. 01, Revisions 2" and LANL/DOE report "Sampling and Analysis Project Validates Acceptable Knowledge on TA–55–43, Lot No. 01" and response to NMED comments on this report received from LANL/

DOE on November 25, 1998 and November 30, 1998.

Opposition Exhibit K (emphasis this Court's). The state does not dispute the contents of that letter but seeks to have the Court enjoin any shipment until such time as the "state process has been completed," sometime in October 1999. However, during oral argument, the state did not contend that it expected NMED to reach a different result. The environmental plaintiffs do not accept the results of NMED's finding but they have not convinced this Court that DOE and NMED are in error or that the process relating to the shipment of waste from TA–55–34, Lot No. 01 should be delayed any longer.

The Court concludes that the plaintiffs have failed to demonstrate that they have a likelihood of success on the merits.

### B. The other criteria relating to the issuance of injunction relief.

The plaintiffs have failed to demonstrate that they will suffer irreparable injury in the event injunctive relief is denied. They appear to contend that DOE has not followed applicable regulations, but the record does not support this claim. They complain about the site and the fact that some rooms may be unstable, but based on the present record they cannot prevail on that argument. Moreover, NMED has concluded that the waste from TA–55–43, Lot No. 01 is nonhazardous.

The defendants argue that the granting of injunctive relief will cause substantial harm to other persons, but the Court is not convinced that the defendants have established that a short delay in making the shipment will expose citizens to harm.

Finally, the public interest supports the granting of injunctive relief in this case.

In sum, the Court concludes that the Court's 1992 permanent injunction does not prevent the shipment of waste from TA–55–43, Lot No. 01 and that the plaintiffs are not entitled to injunctive relief.

It is hereby

**54**

**ORDERED** that the plaintiffs' motion for construction of 1992 injunction is denied, and it is further

**ORDERED** that the motion for a preliminary injunction is denied.